HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CODY J. HOEFS , | CASE NO. 3:20-cv-05173-RBL |
| Plaintiff, | ORDER ON DEFENDANT SIG SAUER, INC.'S MOTION TO DISMISS |
| v. | |
| SIG SAUER INC. , | |
| Defendants. | |

**INTRODUCTION**

THIS MATTER is before the Court on Defendant Sig Sauer, Inc.'s Motion to Dismiss under Rules 12(b)(6) and 9(b). Dkt. # 3. Plaintiff Cody J. Hoefs alleges that, on November 23, 2016, his holstered Sig Sauer P320 pistol discharged spontaneously into his leg. On February 26, 2020, over three years after the incident, Hoefs sued Sig Sauer for selling him a defective pistol. Hoefs asserts claims for negligence, strict liability, breach of implied warranty of merchantability, breach of warranty of fitness for a particular purpose, breach of express warranty, violation of the Magnusson-Moss Warranty Act, unjust enrichment, fraudulent concealment, fraud, and violation of the Washington Consumer Protection Act (CPA).

In its Motion, Sig Sauer argues that Hoefs's claims are preempted and subsumed by the Washington Product Liability Act (WPLA) and that Hoefs failed to meet its three-year statute or limitations. Alternatively, Sig Sauer contends that Hoefs's claims fail for other reasons and that his fraud-based claims are not pled with sufficient particularity. For the following reasons, the Court GRANTS Sig Sauer's Motion in part and DENIES it in part.

**DISCUSSION**

**1.    Legal Standard**

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Although the court must accept as true the complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper 12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

Fed. R. Civ. P. 9(b) establishes heightened pleading standards for claims "grounded in fraud," a category that includes any claim relying upon a "unified course of fraudulent conduct." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). For such claims, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This means the plaintiff is required to "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010). "A motion to dismiss a complaint or claim 'grounded in fraud' under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

**2.      Preemption under WPLA**

Sig Sauer first argues that the WPLA subsumes and preempts the majority of Hoefs's claims because they are based on product liability theories. Hoefs does not dispute Sig Sauer's preemption argument.

The WPLA provides a cause of action for harm caused by products that are not designed, constructed, or labeled in a reasonably safe manner. RCW 7.72.030. The Supreme Court of Washington has held that the WPLA "created a single cause of action for product-related harms, and supplants previously existing common law remedies, including common law actions for negligence." *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 322 (1993). The statute preempts:

> any claim or action brought for harm caused by the manufacture, production, making, construction, fabrication, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, storage or labeling of the relevant product. It includes, but is not limited to, any claim or action previously based on: Strict liability in tort; negligence; breach of express or implied warranty; breach of, or failure to, discharge a duty to warn or instruct,

whether negligent or innocent; misrepresentation, concealment, or nondisclosure, whether negligent or innocent; or other claim or action previously based on any other substantive legal theory except fraud, intentionally caused harm or a claim or action under the consumer protection act, chapter 19.86 RCW.

*Washington Water Power Co. v. Graybar Elec. Co.*, 112 Wash. 2d 847, 853 (1989) (quoting RCW 7.72.010(4)). "Harm" for purposes of the statute "does not include direct or consequential economic loss." *Moodie v. Remington Arms Co., LLC*, No. C13-0172-JCC, 2013 WL 12191352, at *6 (W.D. Wash. Aug. 2, 2013) (quoting RCW 7.72.010(6)). "Plaintiffs must pursue claims for such loss instead under contract law." *Id.*

Here, Hoefs's claims for negligence, strict liability, unjust enrichment, and breach of express and implied warranty[1] are preempted by the WPLA. Most of these claims are explicitly preempted under RCW 7.72.010(4) and all of them arise in some way from the allegedly defective design, manufacture, and warnings of Sig Sauer's P320 pistol. However, the WPLA does not preempt fraud and CPA claims seeking compensation for economic loss. Hoefs's claims for fraud, fraudulent concealment, and violation of the CPA therefore exist independent of the WPLA.

### 3.   Statute of Limitations

Sig Sauer further asserts that Hoefs's claims are untimely because they were filed more than three years after the WPLA's limitations period began the day Hoefs was shot on November 23, 2016. In opposition, Hoefs contends that the statute of limitations began running on the date Sig Sauer offered a "voluntary upgrade" program to address the trigger issue in its pistols on August 8, 2017. According to Hoefs, he could not have reasonably discovered that his injury was

---

[1] Although Hoefs's claim under the Magnuson-Moss Act is based in federal law, "claims under the Magnuson-Moss Act stand or fall with [the plaintiff's] express and implied warranty claims under state law." *Moodie*, 2013 WL 12191352, at *10 (quoting *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 & n.3 (9th Cir. 2008)).

caused by a product defect until that date. At the least, Hoefs asserts that whether he should have discovered the cause of his injury the day he was shot is a factual question.

"Dismissal of claims as barred by the statute of limitations on a Rule 12(b)(6) motion is . . . appropriate only where it is apparent from the face of the complaint that an action will be time barred." *United States v. Sousa*, No. 18-CV-03265-EMC, 2018 WL 6219803, at *1 (N.D. Cal. Nov. 8, 2018) (quoting *Belluomini v. CitiGroup, Inc.*, No. CV 13-01743 CRB, 2013 WL 3855589, 2013 U.S. Dist. LEXIS 103882 (N.D. Cal. July 23, 2013)). The WPLA provides that "no claim under this chapter may be brought more than three years from the time the claimant discovered or in the exercise of due diligence should have discovered the harm and its cause." RCW 7.72.060. The Supreme Court of Washington has interpreted the WPLA as incorporating the "discovery rule," under which the statute of limitations starts running when the claimant "know[s] or should with due diligence know that the cause in fact was an alleged defect." *N. Coast Air Servs., Ltd. v. Grumman Corp.*, 111 Wash. 2d 315, 319 (1988). The plaintiff's knowledge or imputed knowledge is "ordinarily . . . a question of fact." *Id*.

For example, in *North Coast*, the plaintiff's son had been killed in a plane crash that was initially attributed to pilot error until a subsequent investigation uncovered a defect. *Id*. at 317-18. The Court held that whether the plaintiff should have discovered the defect at the time of the crash was a factual question that could not be resolved on a motion to dismiss. *Id*. at 328. Hoefs encourages the Court to take the same approach here.

But this case is sharply distinguishable from *North Coast*. Hoefs alleges, without elaboration, that he "loaded his Sig Sauer P320 pistol [and] put it in the holster[,] at which time the pistol discharged with no prompting while fully-seated in its Sig brand holster." Complaint, Dkt. # 1, at 3. Taking these allegations as true, the Court cannot reasonably infer that Hoefs did

not know and should not have discovered that his injury was caused by a defect at the time he was shot. Unlike *North Coast*, Hoefs's allegations reveal no potential alternate cause of his injuries, such as user error or post-sale damage. And while plane crashes can have many causes, spontaneous gunshots always mean there is something wrong with the gun.

Indeed, this case is more like *Gevaart v. Metco Construction, Inc.*, in which the plaintiff was injured when she slipped on a sloping step. 111 Wash. 2d 499, 502 (1988). Although the plaintiff claimed that she believed the slope was for drainage purposes, the Court held that "[b]y the exercise of due diligence she could have determined that the step did not conform to the building code" and her failure to exercise such diligence in a timely manner barred her claim. *Id*. Here, Hoefs does not even offer an explanation that could support his ignorance of an injury-causing defect. Absent this, any theory that Hoefs should not have discovered a defect on November 23, 2016 would be pure speculation. *See Twombly*, 550 U.S. at 555.

Hoefs's only argument for tolling the statute of limitations is based on Sig Sauer's 2017 voluntary upgrade program, which he says notified him that the pistol's trigger package was defective. But the discovery rule does not require "absolute[] certain[ty]" of the cause of harm, *Holbrook, Inc. v. Link-Belt*, 103 Wn. App. 279 (Wash. Ct. App. 2000), or "knowledge of the existence of a legal cause of action." *Gevaart*, 111 Wash. 2d at 502 (citing *Reichelt v. Johns–Manville Corp.*, 107 Wash.2d 761, 733 P.2d 530 (1987)). It was not necessary for Hoefs to have known that the trigger package in particular was defective if his injury could only have been caused by *some* kind of defect.[2]

---

[2] Furthermore, Hoefs alleges that Sig Sauer presented the upgrade program as an opportunity to make the P320 pistol "better" and continued to misrepresent the gun as safe. Complaint, Dkt. # 1, at  24-25. It is unclear how this, and not Hoefs's own experience getting shot, informed him of the defect.

The Court is skeptical that Hoefs can cure his statute of limitations issue while preserving his core contention that the gun spontaneously fired while it was on his person. However, Hoefs insists (without explanation) that he was unaware of the defect until he learned of the upgrade program. Opposition, Dkt. # 10, at 6; *see Moodie*, 2013 WL 12191352, at *11 (tolling statute of limitations where "Remington led [the plaintiff] to believe that he did not have a defect-based cause of action, thereby inducing him not to file suit"). The Court will give Hoefs a chance to amend his Complaint to allege facts that could plausibly support this contention.

**4.    Fraud Allegations**

Finally, Sig Sauer argues that Hoefs's fraud-based claims are not pled with sufficient particularity because he does not explain whether he saw the alleged misrepresentations, when and where he saw them, or how he relied upon them. Hoefs responds that his allegations are sufficiently specific because they identify the allegedly fraudulent statements that form the basis for his claims.

"Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess*, 317 F.3d at 1106 (internal quotations omitted). As the Court has already explained, Rule 9(b) applies to any claim grounded in fraud and requires a party to "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Sanford*, 625 F.3d at 558. "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106.

Here, Hoefs's claims for fraud, fraudulent concealment, and violation of the CPA rely entirely on Sig Sauer's alleged misrepresentations about its pistols and are therefore grounded in

fraud. Hoefs's fraud claim alleges that Sig Sauer misrepresented its pistols as "drop safe" and stated that they "won't fire unless you want [them] to." Complaint, Dkt. # 1, at 24. He further alleges that Sig Sauer announced its voluntary upgrade program on August 8, 2017 by falsely asserting that the P320 pistol meets "rigorous testing protocols for global military and law enforcement agencies" and describing the upgrade as an optional means of making the pistol "better." *Id*. at 24-25. His fraudulent concealment claim asserts that Sig Sauer has failed to disclose that its pistols are defective "since at least 2014." *Id*. at 23. The CPA claim relies on the misrepresentations and omissions described earlier in the Complaint. *Id*. at 26.

Hoefs's fraud and CPA claims fall short of Rule 9(b)'s requirements. Hoefs does not state when Sig Sauer misrepresented the qualities of its pistols or how Hoefs came into contact with the communications. He is more specific about the statements surrounding the upgrade program, but that occurred after Hoefs purchased his pistol and therefore could not have induced it. Sig Sauer does not, however, explain how Hoefs's fraudulent concealment claim should be more specific. The Court concludes that this claim sufficiently alleges what Sig Sauer concealed (the defect) and for how long (since at least 2014). *See Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) ("[S]ome balance must be achieved between the need to protect defendants from having to defend factually baseless litigation and the need to afford plaintiffs an adequate opportunity to develop factual bases for legitimate claims"). This claim therefore satisfies Rule 9(b).

**CONCLUSION**

Sig Sauer's Motion is DENIED with respect to Hoefs's fraudulent concealment claim but GRANTED with respect to all other claims. Hoefs has 30 days from the date of this order to file

1    an amended complaint that cures the defects identified here; otherwise, his defective claims will

2    be dismissed without further notice.

3              IT IS SO ORDERED.

4

5              Dated this 26th day of June, 2020.

6

7                                                    _____
                                                     Ronald B. Leighton
8                                                    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24